Denise COOPER, Individually and as
Administratrix of the Estate of
Harold S. Cooper, Deceased,

v.

FRANKFORD HEALTH CARE SYS-
TEM, INC., Individually and/or Doing
Business as the Frankford Hospital of
the City of Philadelphia and/or Doing
Business as Frankford Hospital–Tor-
resdale and the Frankford Hospital of
the City of Philadelphia, Individually
and/or Doing Business as Frankford
Hospital–Torresdale and Frankford
Hospital–Torresdale and Clifton Hall,
M.D.

Superior Court of Pennsylvania.

Argued Aug. 20, 2008.
Filed Oct. 20, 2008.

Paul D. Brandes, Conshocken, for appellant.

Robert A. Graci, Harrisburg, for appellee.

BEFORE: STEVENS, MUSMANNO and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Denise Cooper ("Mrs. Cooper"), individually and as administratrix of the estate of her spouse, Harold S. Cooper, M.D., deceased ("Dr. Cooper"), (collectively, "Plaintiff"), appeals from the September 12, 2007 order that sustained the preliminary objections in the nature of a demurrer of the defendants, Frankford Health Care System, Inc., The Frankford Hospital of the City of Philadelphia, Frankford Hospital—Torresdale, (collectively, "Hospital"), and Clifton Hall, M.D. ("Dr. Hall"), (collectively, "Defendants"), resulting in the dismissal of Plaintiff's wrongful death complaint. The trial court determined that Plaintiff did not plead sufficient facts in her complaint to establish that the defendants owed a duty to protect the decedent, Dr. Cooper, from suicide. We affirm.

¶ 2 The following factual recitation is adapted from Plaintiff's complaint. Dr. Cooper, an anesthesiologist, was employed or had privileges at Hospital and, prior to December of 2004, Defendants "knew and/or should have known that Dr. Cooper had a prior personal history of drug or controlled substance abuse or addiction ... but that Dr. Cooper was recovered from or in recovery from such abuse or addiction." Complaint, 5/14/07, at ¶ 19. Plaintiff averred that Defendants "monitored and kept track of controlled substances inventories and uses with the hospital, as part of the regular course of business at the Hospital." Id. at ¶ 20.

¶ 3 In December of 2004, Defendants "suspected and/or allegedly confirmed that Dr. Cooper was improperly taking and/or administering to himself a narcotic/anesthetic, Fentanyl." Id. at ¶ 21. Plaintiff claimed that Defendants "knew and/or

should have known the risks, consequences and/or dangers inherent in narcotic use among health professionals, and particularly among anesthesiologists." Id. at ¶ 22.

¶ 4 According to Plaintiff, on Friday, December 10, 2004, Dr. Hall, who was Hospital's Director of the Department of Anesthesiology at the relevant time, id. at ¶ 16, "confronted Dr. Cooper, during work hours and without any support persons present or available, about Dr. Cooper's alleged taking and/or use of Fentanyl[,]" id. at ¶ 23, and Dr. Hall directed Dr. Cooper to take a urine drug test that day, id. at ¶ 25. Neither Dr. Hall nor Hospital advised Mrs. Cooper (who is also a physician) about the meeting or about Dr. Cooper's suspected drug use. Id. at ¶ 24. Still, Hospital failed to remove Dr. Cooper from the on-call schedule for the following day, Saturday, December 11, 2004. Id. at 26.

¶ 5 On Sunday, December 12, 2004, after completing his on-call responsibilities, Dr. Cooper returned home and committed suicide in his automobile that was parked in his driveway. Id. at ¶ 27. Mrs. Cooper discovered her husband's body upon arriving home with their two minor children. Id. at ¶ 28.

¶ 6 Plaintiff initiated this case on December 5, 2006, by filing a praecipe to issue a writ of summons. On December 13, 2006, Plaintiff filed a "Motion for Leave to Conduct Discovery in Aid of Obtaining Any Required Certificates of Merit and to Draft and File a Sufficient Complaint and Motion for Stay of Proceedings" (hereinafter, "Motion for Discovery"), in which she requested, inter alia, all policies and procedures pertaining to "identifying, confronting, addressing, dealing with, monitoring, testing, screening, disciplining, investigating, and/or supervising a hospital employee and/or physician suspected of using and/or taking Fentanyl and/or any oth-

er drug." Motion for Discovery, 12/13/06, at ¶ 20(a). The trial court issued an order, dated March 26, 2007, which denied Plaintiff's Motion for Discovery.

¶ 7 On May 14, 2007, without the benefit of the discovery requested in her motion, Plaintiff filed a complaint in which she claimed that Defendants' negligence caused Dr. Cooper's suicide. Complaint at ¶ 29. Counts I and II of the complaint set forth claims of negligence against Dr. Hall and Hospital; Count III set forth a claim of vicarious liability of Hospital for Dr. Hall's conduct; Count IV set forth a claim under the Wrongful Death Act, 42 Pa.C.S. § 8301, against all Defendants; and Count V set forth a claim of negligent infliction of emotional distress against all Defendants vis-à-vis Mrs. Cooper. Plaintiff noted in her complaint that she was asserting, in part, claims of professional negligence or liability against each Defendant. *Id.* at ¶¶ 7, 9, 11, 15. This explained Plaintiff's perceived need to obtain certificates of merit, as noted in her Motion for Discovery.

¶ 8 In any event, in her brief to this Court, Plaintiff asserts that the crux of her negligence claims arise "out of [Defendants'] improper or negligent confrontation of [Dr. Cooper], concerning his drug abuse/relapse and [Defendants'] subsequent continuing neglect in failing to take steps to protect him from thereafter harming himself as a result of their inappropriate conduct." Plaintiff's brief at 6. *See also* Plaintiff's brief at 20 (summarizing that each claim is "based upon [Defendants'] improper or negligent confrontation of Dr. Cooper concerning his drug abuse/relapse and their subsequent continuing neglect in failing to take steps to protect him from thereafter harming himself (or others, for that matter) as a result of [Defendants'] improper confrontation").

¶ 9 On June 5, 2007, Defendants filed preliminary objections, in the nature of a demurrer, to all claims asserted in Plaintiff's complaint. On July 5, 2007, again without the benefit of her requested discovery, Plaintiff filed timely certificates of merit as to each Defendant. Nevertheless, by order dated September 12, 2007, (and docketed on September 14, 2007), the trial court sustained Defendants' preliminary objections and dismissed Plaintiff's complaint. In support of its decision, the trial court stated, *inter alia,* that the facts pled in the complaint did not establish, as a matter of law, that Defendants owed a duty to protect Dr. Cooper from suicide. Order, 9/12/07, n. 1 (citing *Campo v. St. Luke's Hosp.,* 755 A.2d 20 (Pa.Super.2000)).

■ ¶ 10 Plaintiff filed a timely notice of appeal and, thereafter, a timely concise statement of matters complained of on appeal, Pa.R.A.P.1925(b), in accordance with the trial court's directive, which included the issues now raised in this appeal, set forth in Plaintiff's brief as follows:

I. UNDER *MCNEIL V. JORDAN,* 586 Pa. 413, 894 A.2d 1260 (2006), DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN DENYING [PLAINTIFF'S] REQUEST FOR LEAVE TO CONDUCT PRE-COMPLAINT DISCOVERY AND FOR A STAY OF PROCEEDINGS, WHICH LATER CONTRIBUTED TO [PLAINTIFF'S] COMPLAINT BEING DISMISSED BY A SUBSEQUENT SEPTEMBER 12, 2007 ORDER SUSTAINING DEFENDANTS' PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER FOR LACK OF SUFFICIENT FACTS, WHEN [PLAINTIFF] DEMON-

STRATED GOOD FAITH, PROBABLE CAUSE, AND THAT TO FILE A SUFFICIENT COMPLAINT, THE INFORMATION WAS MATERIAL AND NECESSARY TO ALLEGE FACTS DEMONSTRATING [DEFENDANTS'] DUTY TO PROTECT ... DECEDENT AND THE SPECIAL CIRCUMSTANCES OF DECEDENT'S SUICIDE FOR WARRANTING AN EXCEPTION TO THE GENERAL RULE[?]

II. DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN SUSTAINING [DEFENDANTS'] PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER AS TO COUNTS I THROUGH V OF THE COMPLAINT FOR FAILURE TO SUFFICIENTLY PLEAD A PRIMA FACIE CLAIM ON NEGLIGENCE AGAINST [DEFENDANTS], BY FINDING THAT [PLAINTIFF'S] COMPLAINT INSUFFICIENTLY PLED THAT A RELATIONSHIP EXISTED BETWEEN DECEDENT, DR. COOPER, AND [DEFENDANTS], GIVING RISE TO A DUTY OF CARE, AND IN LIGHT OF A PRIOR ORDER DENYING [PLAINTIFF'S] PRE–COMPLAINT DISCOVERY[?]

DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN SUSTAINING [DEFENDANTS'] PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER TO COUNTS I THROUGH V OF THE COMPLAINT, BY FINDING THAT A CAUSAL CONNECTION COULD NOT EXIST BETWEEN [DEFENDANTS'] ASSERTED NEGLIGENCE AND DECEDENT'S DEATH, AS HIS SUICIDE COULD NOT, AS A MATTER OF LAW, HAVE BEEN A REASONABLY FORESEEABLE EVENT, EVEN THOUGH [DEFENDANTS] HAD NOTICE OF DECEDENT'S MENTAL STATE AND OF THE HIGH SUICIDE RATES AMONG ANESTHESIOLOGISTS, AND *MCPEAKE V. CANNON*, 381 Pa.Super. 227, 553 A.2d 439 (1989) RECOGNIZES THAT [PLAINTIFF] MAY HAVE A WRONGFUL DEATH ACTION[?]

Plaintiff's brief at 5.[1]

 ¶ 11 A central inquiry of this appeal is whether a legal duty existed or arose on the part of Dr. Hall (and Hospital) to protect Dr. Cooper from harming himself. As Plaintiff emphasizes, her negligence claim rests on the allegedly improper manner in which Dr. Hall confronted Dr. Cooper and the failure to protect Dr. Cooper

---

**1.** We note that "an order granting preliminary objections in the nature of a demurrer is a final order and is, therefore, appealable to this Court immediately." *D'Elia v. Folino*, 933 A.2d 117, 121 (Pa.Super.2007). We also note that our review of the prior order denying Plaintiff's Motion for Discovery is also proper at this time because a notice of appeal filed from a final order that dismisses a complaint, "will be viewed as drawing into question *any prior non-final orders that produced the judgment.*" *McNeil v. Jordan*, 586 Pa. 413, 894 A.2d 1260, 1266 (2006) (quoting *K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863, 871 (2003) (emphasis added)).

from harming himself thereafter. *See, e.g., id.* at 20. Nevertheless, the trial court, in dismissing the complaint, concluded that Plaintiff could not establish the critical "duty" element of her negligence cause of action.[2] In her first issue, however, Plaintiff contends that, had the trial court granted her motion for pre-complaint discovery, she would have obtained information upon which she could have pled the existence of a duty owed from Dr. Hall and Hospital to the decedent, Dr. Cooper, and, in turn, her complaint would not have been subject to dismissal several months later by demurrer.

■ ¶ 12 "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard. To the extent that the question involves a pure issue of law, our scope ... of review [is] plenary." *Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1125 (Pa.Super.2007) (citations and internal quotation marks omitted). "The Pennsylvania Rules of Civil Procedure envision that discovery may be used to aid in the preparation of a complaint." *McNeil v. Jordan,* 934 A.2d 739, 742 (Pa.Super.2007) ("*McNeil II*") (citing *McNeil v. Jordan,* 586 Pa. 413, 894 A.2d 1260, 1268–69 (2006) ("*McNeil I*"), and Pa.R.C.P 4001(c)). In *McNeil II,* we reiterated our Supreme Court's guidance on the issue of pre-complaint discovery:

> ... [T]o obtain pre-complaint discovery a litigant should be required to demonstrate his good faith as well as probable

cause that the information sought is both material and necessary to the filing of a complaint in a pending action. A plaintiff should describe with reasonable detail the materials sought, and state with particularity probable cause for believing the information will materially advance his pleading, as well as averring that, but for the discovery request, he will be unable to formulate a legally sufficient pleading. Under no circumstance should a plaintiff be allowed to embark upon a "fishing expedition," or otherwise rely on an amorphous discovery process to detect a cause of action he lacks probable cause to anticipate prior to the pre-complaint discovery process under this standard. The reasonableness of a given request, as well as the existence of probable cause and the good faith of the party seeking discovery, are matters for the trial court to determine in the exercise of its sound discretion.

*McNeil II,* 934 A.2d at 742 (quoting *McNeil I,* 894 A.2d at 1278 (footnote omitted)). "Probable cause for pre-complaint discovery exists where the moving party states facts supporting a reasonable belief that the evidence sought will support a cognizable cause of action." *Id.* (citing *McNeil I,* 894 A.2d at 1276).[3] In *McNeil I,* our Supreme Court remanded the case to the trial court to assess whether the appellant/plaintiff, in a testamentary dispute, could "establish probable cause that his requested discovery will permit the

---

2. The *prima facie* elements of a negligence cause of action are:
 1. A duty or obligation recognized by law.
 2. A breach of the duty.
 3. Causal connection between the actor's breach of the duty and the resulting injury.
 4. Actual loss or damage suffered by complainant.
*Jones v. Levin,* 940 A.2d 451, 454 (Pa.Super.2007) (citation omitted).

3. As our Supreme Court noted in *McNeil I,* "it must be the case that, in seeking pre-complaint discovery, the moving party can set forth probable cause that, based on facts known to him, the evidence sought prior to the filing of a complaint will support a cognizable cause of action pursuant to existing or developing Pennsylvania law." *McNeil I,* 894 A.2d at 1276.

filing of a complaint capable of surviving a demurrer in the instant litigation and to rule accordingly." *McNeil I*, 894 A.2d at 1279.[4],[5]

¶ 13 Accordingly, we turn to the averments in the Motion for Discovery, in which Plaintiff made the following discovery requests:

a. Any and all written policies, procedures, protocols and/or guidelines regarding identifying, confronting, addressing, dealing with, monitoring, testing, screening, disciplining, investigating, and/or supervising a hospital employee and/or physician suspected of using and/or taking Fentanyl and/or any other drug. These records are needed to draft and file a sufficient Complaint, and if necessary, to obtain expert review for statements of merit;

b. Any and all anesthesia records containing Harold S. Cooper's handwriting and/or signature from Monday December 6, 2004, through and including Saturday, December 11, 2004, (with patient names and social security numbers redacted to protect privacy). These records are needed to determine the amounts of Fentanyl administered by Dr. Cooper prior to his death and to draft and file a sufficient Complaint, and if necessary, to obtain expert review for statements of merit;

c. Any and all medication dispensing machine logs and/or records reflecting the quantity of Fentanyl taken from defendant Hospital's medication dispensing machines by Harold Cooper from Monday December 6, 2004, through and including Saturday, December 11, 2004. These records are needed to determine the amount of Fentanyl taken and/or used by Harold Cooper during the week prior to his death;

d. Any and all documents regarding requesting and/or ordering drug tests of Harold S. Cooper, M.D., and the results of same, from July 1, 2004 to December 31, 2004;

e. Any and all records, files and notes from defendant Dr. Hall regarding

---

**4.** This particular portion of the opinion in *McNeil I* (i.e., part "V" of the opinion) was joined by three of five justices on our Supreme Court who sat in that case. The probable cause standard (enunciated above) initially appeared in another portion of the *McNeil I* opinion (i.e., part "IV") that was expressly joined by only two of the five justices, but was, in the later appeal following remand, adopted and applied by our Court (i.e., in the *McNeil II* opinion).

**5.** Additionally, in *McNeil II*, we stated that "when evaluating the probable cause issue, the complaint and [discovery] motion should be considered together." *McNeil II*, 934 A.2d at 743. However, whereas in the *McNeil* cases the appellant/plaintiff had previously filed a complaint prior to seeking discovery in anticipation of preparing an *amended* complaint, in the instant case the trial court did not have *any* complaint before it, but rather only the averments in the Motion for Discovery when evaluating whether or not Plaintiff presented probable cause for pre-complaint discovery.

Moreover, Plaintiff speculates in her brief that the trial court did not apply the probable cause standard enunciated in the *McNeil* cases. However, despite the lack of a trial court opinion on this issue, we have no reason to conclude that the trial court did not apply the *McNeil* probable cause standard, especially in light of the fact that both Plaintiff and Defendants agreed, argued, and represented to the trial court, that the *McNeil* probable cause standard applied. *See, e.g.*, Motion for Discovery at ¶ 21; Defendants' Response in Opposition to Plaintiff's Motion for Leave to Conduct Discovery in Aid of Obtaining Any Required Certificates of Merit and to Draft and File a Sufficient Complaint and Motion for Stay of Proceedings, 3/15/07, at ¶ 21.

Dr. Harold S. Cooper and/or Denise Cooper. These records are necessary to determine what Dr. Hall should have and/or did do to confront and/or supervise Dr. Cooper prior to his death and to draft and file a sufficient Complaint, and if necessary, to obtain expert review for statements of merit;

f. Any and all emails (either in electronic form or as printed hard copies) either to or from Dr. Hall written from November 2004 to the present with the word "Harold" or "Cooper" written in the text or subject line of the email. These records are needed to determine what Dr. Hall should have and/or did do to confront and/or supervise Dr. Cooper prior to his death and to draft and file a sufficient Complaint, and if necessary, to obtain expert review for statements of merit;

g. Any and all reports in the control, custody, or possession of defendant Hospital and/or defendant Dr. Hall in relation to the confrontation between defendant Dr. Hall and Dr. Harold Cooper before or after the week of Harold Cooper's death on December 12, 2004. These records are needed to obtain expert review for statements of merit and to draft and file a sufficient Complaint, and if necessary, to obtain expert review for statements of merit[.]

Motion for Discovery at ¶ 20(a)-(g).

¶ 14 Plaintiff's discovery requests describe, with reasonable detail, the materials sought, and Plaintiff sufficiently avers that, "but for the discovery request, [s]he will be unable to formulate a legally sufficient pleading." *McNeil II*, 934 A.2d at 742 (quoting *McNeil I*, 894 A.2d at 1278). Additionally, we assume for purposes of our analysis that Plaintiff sought these materials in good faith.

■ ¶ 15 However, Plaintiff failed to demonstrate "probable cause for believing the information will materially advance [her] pleading" insofar that she did not state "facts supporting a reasonable belief that the evidence sought [would] support a cognizable cause of action[,]" *id.*, particularly with respect to the duty element of a negligence cause of action. Rather, in the brief Plaintiff filed with the trial court in conjunction with her Motion for Discovery, Plaintiff merely argued: "In the instant matter, Plaintiff would satisfy the probable cause requirement set forth in *McNeil* as Plaintiff reasonably believes that the information sought in paragraph 20 of her motion for pre-complaint discovery is material and necessary to enable her to draft a legally sufficient Complaint." Brief in Support of Motion for Discovery, 12/13/06, at 5. Plaintiff then proceeded to list the materials sought in discovery, as indicated above. *Id.*

■ ¶ 16 However, we conclude that merely stating that the information sought in discovery is "material and necessary" to "draft a legally sufficient Complaint[,]" and then simply listing the materials requested, does not satisfy the *McNeil* probable cause standard of presenting "facts supporting a reasonable belief that the evidence sought will support a cognizable cause of action." *McNeil II*, 934 A.2d at 742 (citing *McNeil I*, 894 A.2d at 1276).[6] Accordingly, the trial court did

---

6. Plaintiff further argued that she required these materials to prepare certificates of merit in accordance with Pa.R.C.P. 1042.3, applicable to professional liability claims, but concurrently stated her belief that her claims did not sound in professional liability. Brief in Support of Motion for Discovery at 6 n. 4. Indeed, there is no indication that, under the facts as pled in the instant case, that Dr. Hall was treating Dr. Cooper so as to establish a

not abuse its discretion by denying Plaintiff's request for pre-complaint discovery. Although Plaintiff now, in her brief to this Court, further develops her contention that probable cause existed to warrant pre-complaint discovery, by asserting, for example, that a "relationship" existed between Dr. Hall/Hospital and Dr. Cooper that would give rise to a duty, Plaintiff did not sufficiently plead any such purported relationship in her Motion for Discovery and its associated brief. By way of further example, Plaintiff now argues in her brief to our Court, as another basis for probable cause, that "[a]nesthesiologists have the highest addiction and suicide rate among medical professionals" and that the certificates of merit (that Plaintiff eventually obtained despite the denial of her discovery motion) established that the "medical community believes that a relationship and corresponding duty of care is known to exist as between [Defendants] and [Dr. Cooper] under the circumstances of this case." Plaintiff's brief at 16. Plaintiff goes on to cite recommendations from the American Society of Anesthesiologists with regard to how to properly conduct an intervention with a drug-dependent anesthesiologist. *Id.* at 16–17. However, none of these arguments were presented to the trial court when it was considering Plaintiff's Motion for Discovery and, accordingly, we consider them waived. *See, e.g., Citizens Bank of Pennsylvania v. Myers,* 872 A.2d 827, 836 (Pa.Super.2005) (relying on Pa.R.A.P. 302 to waive claim on appeal after finding that the appellant never presented associated argument to trial court in support of motion to dismiss). *See also Morgan v. Sbarbaro,* 307 Pa.Super. 308, 453 A.2d 598, 599 (1982) (stating that a "different theory of relief may not be successfully advanced for the first time" on appeal). Additionally, despite Plaintiff's

physician-patient relationship and its associ-

contention that the medical community may recognize a duty of care under these circumstances, we note that "[t]he existence of a duty is a question of law for the court to decide[,]" *Commerce Bank/Pennsylvania v. First Union Nat'l Bank,* 911 A.2d 133, 137 (Pa.Super.2006) (citation omitted), and Plaintiff simply failed to establish probable cause in the pleadings presented to the trial court in support of her Motion for Discovery.

¶ 17 In her second issue, Plaintiff argues that the trial court erred by sustaining Defendants' preliminary objections and dismissing her complaint on the basis that it was "unable to find on the facts pled any legal basis for the proposition that Defendants owed a duty to Plaintiff to protect him from suicide." Order/Opinion, 9/12/07, at n. 1.

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. *Cardenas v. Schober,* 783 A.2d 317, 321 (Pa.Super.2001) (citing Pa. R.C.P. 1028(a)(4)). "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Id.* at 321–22. (citation omitted). All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true. *Id.* at 321

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts

ated professional duty of care.

averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case if free and clear of doubt.

*Brosovic v. Nationwide Mutual Insurance Co.*, 841 A.2d 1071, 1073 (Pa.Super.2004) (citation omitted).

*Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805–06 (Pa.Super.2007).

■ ¶ 18 Plaintiff first argues that her complaint supports the existence of a duty based on a "special relationship" existing between Defendants and Dr. Cooper. Plaintiff's brief at 13, 18. In support of this position, Plaintiff analogizes the instant case to *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), to several cases involving civil rights' actions against prison authorities in relation to prisoner suicides (*e.g.*, *Arocho v. County of Lehigh*, 922 A.2d 1010 (Pa.Cmwlth.2007), *appeal denied*, 596 Pa. 720, 944 A.2d 759 (Pa.2008)), and to cases involving hospitals' refusals to grant privileges to physicians (*e.g.*, *Rosenberg v. Holy Redeemer Hosp.*, 351 Pa.Super. 399, 506 A.2d 408 (1986)). Plaintiff's brief at 21, 23. However, these cases are distinguishable.

¶ 19 In *Tarasoff*, the Supreme Court of California held that a psychotherapist could be liable in a wrongful death action to a third-party whose daughter was murdered by the psychotherapist's patient. The duty owed by the psychotherapist to the third-party arose on the following basis:

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Tarasoff*, 131 Cal.Rptr. 14, 551 P.2d at 340. However, the holding in *Tarasoff* was explicitly dependent on the underlying psychotherapist-patient relationship. As the *Tarasoff* court explained:

> when the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim. Since the relationship between a therapist and his patient satisfies this requirement, we need not here decide whether foreseeability alone is sufficient to create a duty to exercise reasonabl[e] care to protect a potential victim of another's conduct.

*Id.*, 131 Cal.Rptr. 14, 551 P.2d at 342–43. Since Dr. Hall/Hospital did not have a similar therapeutic relationship vis-à-vis Dr. Cooper, Plaintiff's reliance on *Tarasoff* is misplaced.

¶ 20 The *Arocho* case is similarly unavailing, as it dealt with whether the estate of a person who committed suicide while imprisoned could sustain a civil rights'

claim (42 U.S.C. § 1983) against the prison based on the Eighth Amendment's proscription against cruel and unusual punishment. Indeed, Plaintiff's attempt to analogize the instant case to cases involving purported duties of care owed to prisoners who are in a custodial environment against their will, does not persuade us that a special relationship giving rise to a duty exists in the instant case, where there is no indication of a custodial relationship or its associated requirement that "special precautionary measures" be instituted. *See* Plaintiff's brief at 21–22.

¶ 21 Plaintiff also contends that a special relationship existed between Defendants and Dr. Cooper, "since Dr. Cooper applied for and was granted privileges to practice medicine at [Hospital], ... particularly since [Hospital] could revoke, modify or rescind the doctor's privileges but only in accordance with due process of law." Plaintiff's brief at 23. In addition to *Rosenberg*, Plaintiff cites the following cases in support this proposition: *Bhattacharjee v. Department of State*, 808 A.2d 280 (Pa.Cmwlth.2002); *Gordon v. Lewistown Hosp.*, 714 A.2d 539 (Pa.Cmwlth. 1998); and *Saad v. Sacred Heart Hosp.*, 700 A.2d 604 (Pa.Cmwlth.1997). However, none of these cases involved negligence claims and none persuade us that a duty was owed under the circumstances of the instant case.[7]

¶ 22 Plaintiff next contends that a duty arose pursuant to the manner in which Dr. Hall confronted Dr. Cooper: "By choosing to confront Dr. Cooper, and then choosing to do so in an improper or negligent manner, defendant, Dr. Hall, thereby took an obligation to use reasonable care to protect Dr. Cooper (and Dr. Cooper's patients) given Dr. Cooper's history and the foreseeable consequences with regard thereto." Plaintiff's brief at 23. Plaintiff also relies on the Restatement (Second) of Torts, sections 323 and 324, for the proposition that "basic tort law establishes a duty on the part of [Defendants] by virtue of [Defendants'] voluntary undertaking and their failure to exercise reasonable care when confronting Dr. Cooper in furtherance of that undertaking." *Id.*

■■■ ¶ 23 The Restatement (Second) of Torts, section 323, reads as follows:

§ 323. Negligent Performance Of Undertaking To Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965). Unfortunately, Plaintiff cites no case law in conjunction with section 323. In this regard, we remind Plaintiff that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 93 (Pa.Super.2007). Nevertheless, pursuant to our own research, we

---

7. Rather, *Rosenberg* involved a physician suing a hospital that denied him staff privileges, *Bhattacharjee* involved an appeal from the State Board of Medicine's decision to suspend a physician's license, *Gordon* involved a physician's complaint that his hospital privileges were wrongfully suspended due to his disruptive behavior at work, and *Saad* involved judicial review of a hospital's peer review panel's decision to terminate a doctor from a residency program.

discovered that section 323 has been applied in Pennsylvania, for example, to "impose on a landlord an independent legal duty to exercise reasonable care when he/she undertakes to render services for a tenant and repairs known dangerous conditions on the leased premises." *Reed v. Dupuis*, 920 A.2d 861, 867 (Pa.Super.2007). *See also Carrozza v. Greenbaum*, 866 A.2d 369, 380 (Pa.Super.2004) (relying on section 323 to help define the "increased-risk-of-harm" standard in the context of a patient who sued her physician for delayed diagnosis of breast cancer). Notably, the existence of the duty described in section 323 is not dependent on any separate underlying duty, such as arising from a contract like a lease agreement between a landlord and tenant. *Id.*

¶ 24 Nevertheless, these cases are distinguishable from the instant case because they involve circumstances where one party undertook "gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things." RESTATEMENT (SECOND) OF TORTS § 323. For example, the services rendered in *Reed* were in the context of a landlord who undertook to remediate a water infiltration issue in his tenant's house. In the instant case, there is no indication that, in the context of their confrontation two days prior to Dr. Cooper's unfortunate suicide, Dr. Hall undertook to render services to Dr. Cooper gratuitously or for consideration.

¶ 25 The Restatement (Second) of Torts, section 324, reads as follows:

§ 324. Duty Of One Who Takes Charge Of Another Who Is Helpless

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Again, pursuant the plain language of this section, we conclude it is inapplicable to create a duty from what is pled in the instant case. Particularly, there is no indication that Dr. Cooper was ever in Dr. Hall's "charge" or that Dr. Hall "discontinu[ed] his aid or protection," thereby leaving Dr. Cooper "in a worse position than when [Dr. Hall] took charge of him." *Id. See also Petrongola v. Comcast–Spectacor, L.P.*, 789 A.2d 204, 213 (Pa.Super.2001) (concluding hockey arena had no duty under section 324 to season ticket-holding spectator injured by errant puck where, *inter alia*, arena "did not take charge of [spectator] once he entered the facility, and there [was] nothing to indicate that [spectator] was incapable of taking care of himself"). *Cf. Filter v. McCabe*, 733 A.2d 1274, 1278 (Pa.Super.1999) (concluding potential cause of action existed under section 324 where defendant homeowner, who was drinking with plaintiff neighbor, negligently discontinued care after taking charge or rendering aid to neighbor after neighbor fell and hit his head on defendant's concrete basement floor).

¶ 26 As for the existence of a duty arising merely from Plaintiff's contention that Defendants had the expertise to foresee that their confrontation with Dr. Cooper would result in his suicide, we find the case of *McPeake v. William T. Cannon, Esquire, P.C.*, 381 Pa.Super. 227, 553 A.2d

439 (1989), most instructive.[8] In that case, we stated:

> Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. **This is so because suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor.** There are, however, limited exceptions to this rule. For example, Pennsylvania has recognized suicide as a legitimate basis for wrongful death claims involving hospitals, mental health institutions and mental health professionals, where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent. In other cases, where the defendant was not associated with a hospital or mental health institution, courts have required both a clear showing of a duty to prevent the decedent's suicide and a direct causal connection between the alleged negligence and the suicide. A third line of cases which have recognized suicide as a basis for recovery involve suits brought under the worker's compensation statute. Under this statute, compensation will be granted if a suicide was caused by pain, depression or despair resulting from a work-related injury so severe as to override rational judgment.

*McPeake*, 553 A.2d at 440–41 (citations omitted, emphasis added). We are not convinced that any of the limited exceptions noted in *McPeake* apply under the circumstances of the instant case to trump the application of the general rule that "suicide has not been recognized as a legitimate basis for recovery in wrongful death cases." *Id.*

¶ 27 Finally, Plaintiff attempts to distinguish the case primarily relied upon by the trial court to dismiss her complaint, *Campo v. St. Luke's Hosp.*, 755 A.2d 20, 23–24 (Pa.Super.2000). In *Campo*, the decedent anesthesiologist died from a fatal combination of Prozac and Demerol, the latter of which is a narcotic that he diverted unlawfully from the hospital. His estate sued the hospital for negligence, arguing that the hospital owed a duty to prevent the anesthesiologist from taking a fatal drug overdose. The estate premised the finding of a duty on the part of the hospital based on their statutory and regulatory obligations to, *inter alia*, maintain records of controlled substances. We rejected that basis for finding a duty, concluding essentially that the legislation at issue did not create a duty for the benefit of the individual anesthesiologist but was, rather, promulgated to protect the health and safety of the public. *Campo*, 755 A.2d at 26. In that respect, we indicated that, imposing liability on the hospital would "essentially reward[ ] drug abuse among medical practitioners." *Id.*

¶ 28 Additionally, in *Campo*, we concluded that a duty could not be premised on the estate's contention that "the hospital knew or should have known of the potential for drug abuse among its medical staff, thus imposing a duty to protect Dr. Campo." *Id.* at 27. This is similar to Plaintiff's argument in the instant case that a duty arose due to the foreseeability of Dr. Cooper's suicide, especially in light of Defendants' purported knowledge concerning the incidence of drug abuse among anesthesiologists. However, we rejected this argument in *Campo*, reasoning as follows:

---

**8.** Also instructive in this regard is section 314 of the Restatement (Second) of Torts, which states, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

[The hospital], however, does not contend that it was unaware of the potential for drug abuse among doctors, nor does it contest that it was obligated to implement a drug distribution system consistent with the Act. Rather, it claims, and we agree, that any duty owed in this instance does not extend to the protection of Dr. Campo from his own addiction and resulting death. It is, after all, a question of fairness. Placing a duty on the part of the hospital to monitor its controlled substances simply does not translate into an award of monetary relief for the injury suffered herein. As we previously noted, "duty is only a word with which we state ... that there is or is not to be liability." Allowing recovery for the unfortunate but self-inflicted harm suffered by Dr. Campo is inconsistent with Pennsylvania authority encouraging personal responsibility for one's own transgressions.

*Id.* (citations omitted). Indeed, in *Campo,* we noted that the inquiry into whether or not a duty should be recognized "involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Id.* at 24 (citation omitted). "Our duty analysis depends on many factors and is 'necessarily rooted in public policy considerations, i.e., our ideas of history, morals, justice, and society in general in determining where the loss should fall.'" *Id.* (citations omitted). Additionally:

Duty, as a concept, is a flexible notion. "In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered."

*Id.* (citations omitted).

¶ 29 Thus, in accordance with the public policy that, in most cases, militates against imposing liability against one party for another party's suicide, as enunciated in cases such as *McPeake* and *Campo,* we conclude that public policy also dictates against finding a duty in the instant case on the part of Defendants to protect Dr. Cooper from suicide. Moreover, Plaintiff's attempt to distinguish *Campo* on the basis that the hospital defendant was not aware of Dr. Campo's drug addiction issue is unavailing. In this vein, we further conclude, as a matter of public policy that, to impose a duty under the circumstances of the instant case, where Defendants were aware of Dr. Cooper's drug addiction history and the fact that Dr. Cooper was in recovery at the time they hired him, would only create a chilling effect on the hiring of physicians who are trying to recover from drug addiction and attempting to re-establish their livelihoods.

¶ 30 Accordingly, we conclude that the trial court did not err or abuse its discretion in denying pre-complaint discovery and later dismissing Plaintiff's complaint on the basis that Plaintiff failed to plead a legally cognizable duty. Thus, we need not address Plaintiff's third issue, *i.e.,* whether she sufficiently pled causation. The lack of a duty, alone, is enough to conclude that Plaintiff cannot sustain a cause of action based upon negligence. *Campo,* 755 A.2d at 24 (stating that "unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence" (citation omitted)).

¶ 31 Order affirmed.