J-A15018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARGARET DENZEL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FEDERAL CLEANING CONTRACTORS AND J. FOSTER & SONS, INC. AND POAG & MCEWEN LIFESTYLE CENTER, LLC, THE PROMENADE SHOPS AT SAUCON VALLEY A/K/A PROMENADE SHOPS AT SAUCON VALLEY, AND PRUDENTIAL INVESTMENT MANAGEMENT, INC. | |
| Appellees | No. 3307 EDA 2014 |

Appeal from the Order November 6, 2014
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): No. 2013-C-1078

BEFORE:  BOWES, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED OCTOBER 09, 2015**

Appellant, Margaret Denzel, appeals from the November 6, 2014 order granting summary judgment in favor of Appellees, Federal Cleaning Contractors, Inc. (Federal), J. Foster and Sons, Inc. (Foster), Poag & McEwen Lifestyle Center, LLC (Poag), the Promenade Shops at Saucon Valley (Promenade Shops), and Prudential Investment Management, Inc. (Prudential).  After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

The trial court set forth the pertinent factual history in its opinion filed in support of its order granting summary judgment in favor of Appellees, as follows.

> Plaintiff, [Appellant] alleges that on February 12, 2010, she sustained injuries at [Promenade Shops], a shopping center. [Appellant] claims that she slipped on the sidewalk in front of The Children's Place store due to "certain elevations and accumulations of hills and ridges of ice and/or snow."
>
> [Appellant] sued the owners and management entities of the shopping center, … [and] the two contractors who performed sidewalk snow removal at the shopping center[, Appellees].
>
> The Promenade [Shops] is an outdoor shopping mall, approximately 475,000 square feet. The Promenade Shops consists of several large buildings with various stores, each with their own exterior entrance. The stores are bordered with wide sidewalks along two-lane driveways.
>
> Prior to [Appellant]'s fall, a snowstorm brought 17 inches of snow to Allentown starting 7 p.m. on February 9, 2010 until 7 p.m. on February 10, 2010. Due to the magnitude of the storm, Federal performed snow removal and salting activities for three days, from February 10, 2010 through February 12, 2010. At the time of [Appellant]'s fall, Federal still had four employees on duty. Foster had laborers working the same time period, including six at the time of [Appellant]'s fall.
>
> [Appellant] is a school librarian in the North Penn School District, which was closed February 11 and 12 due to snow-day cancellations. Due to the snow day, [Appellant] did not have to work and was packing for a vacation to Arizona. She drove to the Promenade to buy sneakers for her trip the following day. She went to the Sneaker King and purchased a pair of shoes. The sidewalks were "absolutely clear

on her path into Sneaker King." [Appellant] alleges the "whole front looked perfect" and dry.

After her purchase, [Appellant] was headed to Ann Taylor Loft to see if there were any big sales. She had no specific need, but just wanted to browse. She was carrying a purse and her newly purchased sneakers in a plastic bag. Immediately prior to her fall, [Appellant] saw a clean-up crew and that the area she was headed towards had snow and was "not cleaned up."

After turning the corner, [Appellant] slipped and fell in front of the Children's Place store. She saw the snow and the ice ahead of her and fell while attempting to negotiate around it safely. The Children's Place was a party to this suit, however a stipulated dismissal was filed on June 3, 2014. [Appellant] fell on the sidewalk and while she was supine and waiting for the ambulance, she took photos of the area. She believed she slipped on black ice, and said if she could have seen it, she would "not walk on a chunk of ice." [Appellant] stated "[a]s I got to the corner, I saw that there was snow—I knew I was going to have to be careful because it was snow and ice there at the end there."

After [Appellant]'s fall, Allied Barton Security filed an incident report at 11:11 a.m. on Friday, February 12, 2010. On the incident report "voluntary statement made by complainant," reads "I should have stayed home. This place is a mess." At her deposition, [Appellant] was asked if she saw the patches of snow and ice before her fall, she replied "I guess I could see that it was in front — it was off in front of me." [Appellant] did state she knew she would have to be careful, but decided to proceed.

Defendants, Federal, Prudential, Poag and Promenade [Shops] filed a Motion for Summary Judgment on July 8, 2014 and Defendant, … Foster … filed a Motion for Summary Judgment on July 9,

2014. [Appellant] responded on August 5, 2014 and argument was held August 18, 2014.

Trial Court Opinion, 11/6/14, at 2-4 (internal citations omitted).

Thereafter, on November 6, 2014, the trial court granted Appellees' motion for summary judgment. On November 24, 2014, Appellant filed a timely notice of appeal.[1]

On appeal, Appellant raises the following issue for our review.

> 1. Did the trial court err and/or abuse its discretion in finding that as a matter of law the [Appellant] assumed the risk of confronting a known and obvious condition, relieving [Appellees] of a duty where the undisputed facts are:
>
> > (a) At the time of [Appellant]'s accident, [Appellees] were charged with the responsibility of maintenance, possession and control of an outdoor retail mall called the Promenade Shops at Saucon Valley;
> >
> > (b) That the area in question received approximately 17 inches of snow, which precipitation ended approximately forty (40) hours prior to [Appellant]'s fall;
> >
> > (c) That at the time of the accident, the [Appellant] was a business invitee;
> >
> > (d) That on February 12, 2010, [Appellees] chose to open the mall for business to its customers;

---

[1] [Appellant] and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. We note, on December 18, 2014, the trial court filed its Rule 1925(a) statement, and therein, adopted the reasoning set forth in its November 6, 2014 opinion.

(e) That [Appellant] at no time whatsoever admitted in her deposition to knowingly walking through or onto ice, but rather unequivocally stated numerous times that she believed she was stepping onto the dry and clear patches of pavement she perceived and walking on same when her foot came into contact with an area of black ice that she did not see or appreciate before it caused her to slip and fall.

Appellant's Brief at 4.

Our standard of review of an order granting summary judgment is well settled. Our task is "to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1193 (Pa. Super. 2015) (citation omitted).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. When the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which [he] bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Cigna Corp. v. Exec. Risk Indem., Inc.*, 111 A.3d 204, 210 (Pa. Super. 2015), *quoting* *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). "[O]ur responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." *Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (citation omitted), *appeal denied*, 117 A.3d 298 (Pa. 2015). Consequently, if the record contains evidence that would allow a fact-finder to return a verdict in favor of the non-movant, then summary judgment is not proper. *Id.*

Instantly, Appellant argues "[t]he trial court erred in holding that as a matter of law [Appellant] assumed the risk of her injury, relieving [Appellees] of a duty to care, notwithstanding the fact that many factual issues remain on said conduct taken by both [Appellant] and [the] defendants in this case." Appellant's Brief at 10. Specifically, Appellant argues she "did not subjectively know she was walking on ice before her fall. While she saw ice and snow ahead of her, she was attempting to negotiate around it safely, when she fell." *Id.* at 13. Appellant then quotes various portions of her deposition and posits as follows.

> None of the statements are referred to in the trial court's opinion, and each and every one of them suggests that [Appellant] was in fact trying to exercise due care and caution, acknowledging at all

> times that the entire sidewalk was not fully covered with ice and snow, but rather, that there were patches of ice and snow that she chose to navigate between and that in attempting to exercise care, she slipped as a result of black ice being on the pavement that she never saw which she thought was pavement.

*Id.* at 20.

As Appellant's claim sounds in negligence, she must establish that Appellees owed her a duty, Appellees breached that duty, and that Appellant's injuries were a result of Appellees' breach of duty. ***Casselbury v. Am. Food Serv.***, 30 A.3d 510, 512-513 (Pa. Super. 2011); ***Cooper v. Frankford Health Care Sys., Inc.***, 960 A.2d 134, 140 n.2 (Pa. Super. 2008) (citation omitted), *appeal denied*, 970 A.2d 431 (Pa. 2009). Furthermore, Appellant has the burden of proving all of the above elements. ***Feeney v. Disston Manor Pers. Care Home, Inc***., 849 A.2d 590, 594 (Pa. Super. 2004), *appeal denied,* 864 A.2d 529 (Pa. 2004).

Moreover, "[t]he standard of care owed to an individual by a possessor of land depends upon whether the individual is a trespasser, licensee or invitee." ***Banks v. Trustees of Univ. of Pa.***, 666 A.2d 329, 331 (Pa. Super. 1995) (citations omitted). When a plaintiff is on a defendant's premises as a business invitee, as is the case here, this Court has recognized the following duty of the landowner.

### § 343 Dangerous Conditions Known to or Discoverable by Possessor

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343. Further, this section should be read in conjunction with the following.

### § 343A Known or Obvious Dangers

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Id.* § 343A.

In ***Carrender v. Fitterer***, 469 A.2d 120 (Pa. 1983), our Supreme Court held that "to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." *Id.* at 125. Carrender was a patient attending an appointment at a chiropractic clinic when she slipped and fell on ice in the clinic's parking

lot. *Id.* at 121. Carrender testified at trial that while sitting in her car she became aware of the slippery conditions in the parking lot, and that there was a sheet of ice covering the area next to her car. *Id.* at 121-122. Despite the fact that she acknowledged there were clear areas in the parking lot where she could have moved her car, Carrender attempted to maneuver through the ice on which she fell and fractured her hip. *Id.* at 122. Carrender admitted that she saw the ice but testified that she tried to avoid it. *Id.* Based on Carrender's testimony our Supreme Court held "that [Carrender]'s own testimony compels the conclusion that, as a matter of law, [the clinic was] under no duty either to take precautions against or to warn of the isolated patch of ice on the parking lot." *Id.* at 123. Accordingly, the *Carrender* Court concluded as follows.

> In light of [Carrender]'s uncontradicted testimony, it must be concluded that the danger posed by the isolated patch of ice was both obvious and known, and that [the clinic] could have reasonably expected that the danger would be avoided. Thus, [Carrender] failed to establish the element of duty essential to a prima facie case of negligence, and [the clinic was] therefore entitled to a judgment notwithstanding the verdict.

*Id.* at 124.

This Court has adhered to the holding of *Carrender*.

> In *Carrender*[], which remains controlling precedent in Pennsylvania, our Supreme Court established that assumption of the risk is, as the trial court explained, a function of the duty analysis:

Appellee misperceives the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable to his invitees for obvious dangers. When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Montagazzi* [*v. Crisci*], 994 A.2d [626,] 635–36 [(Pa. Super. 2010)] (*quoting* **Carrender**, 469 A.2d at 125).

**Longwood v. Giordano**, 57 A.3d 163, 167 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1099 (Pa. 2013).

Upon careful review of the evidence, viewed in the light most favorable to Appellant as the non-moving party, we are compelled to agree with the trial court's conclusion that summary judgment in favor of Appellees was proper. The facts herein are substantially analogous to the facts in **Carrender**. At Appellant's deposition on March 6, 2014, Appellant testified that on the date of the incident she had initially gone to the Promenade to

- 10 -

buy sneakers at Sneaker King. N.T., 3/6/14, at 29. Appellant testified that the walkway leading to Sneaker King was clear of snow, ice, and slush, and to her recollection was completely dry. *Id.* at 41. She then headed to Ann Taylor Loft, and on the walk there approached people working on removing snow from the road adjacent to the sidewalk. *Id.* at 44. Appellant then identified five photographs she took on her iPhone from the ground where she had fallen. *Id.* at 48-49. The pictures indicated snow, slush and ice on the sidewalk, which Appellant conceded she observed at the time, but that she "tr[ied] to walk on the cleared-off space[.]" *Id.* at 52. Appellant described the condition of the sidewalk as follows.

> It was fine when I left the sneaker store. It was okay making the right turn there. As I got to the corner, I saw that there was snow - - I knew I was going to have to be careful because it was snow and ice there at the end there. In the area I fell in, that's why I took the pictures of it.

*Id.* at 171. She further testified as follows.

> Q. And when you saw these conditions, you knew they were dangerous?
>
> A. I had to be very careful where I walked.
>
> Q. Did you know they were dangerous?
>
> A. I knew I saw snow and ice.
>
> Q. Did you know they were dangerous?
>
> A. Snow and ice, yes. Yes.
>
> ….

- 11 -

> Q.  Why did you not, at that point, simply turn around and walk back over the fine, dry sidewalk to your car?
>
> A.  Because I - - I saw spots that I thought were dry and I just kept going.
>
> Q.  Was there any reason why you could not have simply turned around and went back to your car?
>
> A.  No.  I could have.  No.

*Id.* at 173.

As the foregoing testimony clearly illustrates, Appellant became aware of the ice and snow on the sidewalk in front of her.  Appellant's testimony further reveals that, although aware of the dangerous condition she was approaching, she chose to traverse the area anyway hoping to avoid the ice.  As in **Carrender**, Appellant became aware of the obvious danger of walking on the ice and therefore Appellees could reasonably have expected that the risk would be avoided.  Based on the forgoing, we agree that Appellant cannot establish a *prima facie* case for negligence, and as a result summary judgment was properly granted.  **See Casselbury**, **supra**; **Cooper**, **supra**; **Feeney**, **supra**.

Based on the foregoing, we conclude that Appellant's sole issue on appeal is devoid of merit.  Accordingly, we affirm the trial court's November 6, 2014 order granting summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2015