J-E03001-21

2022 PA Super 197

| | | |
|---|---|---|
| AISHA MONROE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CBH20, LP, D/B/A CAMELBACK SKI | : | No. 1862 EDA 2019 |
| RESORT D/B/A CAMELBACK SKI | : | |
| CORPORATION | : | |

Appeal from the Order Dated May 16, 2019
In the Court of Common Pleas of Monroe County
Civil Division at No.:  8184-CV-2016

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., OLSON, J., STABILE,
J., KUNSELMAN, J., NICHOLS, J., KING, J., and McCAFFERY, J.

DISSENTING OPINION BY STABILE, J.:          **FILED NOVEMBER 21, 2022**

I respectfully dissent from my learned colleagues.  I would affirm the

trial court's grant of judgment on the pleadings, or alternatively grant

summary judgment, in favor of the Appellee CBH20, LP ("Camelback") and

against Appellant Aisha Moore ("Appellant" or "Plaintiff"), as requested in

Camelback's motion for judgment on the pleadings, and its supplemental

motion for summary judgment ("the "Motion").  In my opinion, the Majority

fails to consider a crucial part of the pleadings in its review of the motion for

judgment on the pleadings and relies upon facts not supported by the record

in its review of summary judgment.

**A. The Motion for Judgment on the Pleadings**

Plaintiff filed a claim for negligence to which Camelback asserted as a

defense in its answer and new matter, *inter* alia, that the action was barred

by Plaintiff's execution of an "Activity Release and Agreement Not To Sue" ("the "Activity Release").  The issue to be decided was whether Plaintiff pled or sufficiently pled that Camelback engaged in "reckless" conduct so that the fact of the Activity Release would not bar a potential recovery.  The trial court, like the Majority, identified only paragraph 21 in Plaintiff's amended complaint that averred "recklessness" for examination.  The trial court granted Camelback's motion for judgment on the pleadings concluding that while Plaintiff used the term "recklessness" in this sole paragraph, none of the allegations in support of that term approach the type of conduct necessary to prove or plead a claim for reckless conduct.  Trial Court's Pa.R.A.P. 1925(a) Statement (the "Statement"), 8/16/19, at 9.  Paragraph 21, which I reproduce again for ease of reference, provided as follows:

21. [Camelback's] recklessness, carelessness and negligence included, but was not limited to:

a. Failing to properly monitor the speed of the zipline, in disregard of the safety of [Ms. Monroe];

b. Failing to use reasonable prudence and care by leaving [Ms. Monroe] to land with no help, in disregard of the safety of [Ms. Monroe];

c. [Left blank]

d. Failing to use reasonable prudence and care to respond to [Ms. Monroe]'s safety concerns during the zip[-]lining, specifically when [Ms. Monroe] as[ked Camelback] to slow down the zip[-]lining machine, in disregard of the safety of Ms. Monroe; and,

> e. Failing to inspect and/or properly monitor the zip[-]lining machine engine, in disregard of the safety of [Ms. Monroe].

Amended Complaint, 1/25/17, at ¶ 21. The court concluded that Plaintiff's list of alleged wrongs included within this paragraph such as "properly" and "reasonable prudence" and the omission of terms reserved for recklessness, such as "conscious disregard" or "reckless disregard" or "extreme departure from ordinary care" were insufficient to support a recklessness claim. The Statement at 9.

The Majority finds error with the trial court concluding instead that the pleading requirements under Pa.R.Civ.P. 1019 do not render Plaintiff's amended complaint insufficient. Rule 1019 provides in relevant part:

**Rule 1019. Contents of Pleadings. General and Specific Averments**

(a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form.

(b) Averments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally.

Pa.R.Civ.P. 1019. The Majority interprets the plain language of this Rule to instruct that while a party must plead the material facts that support a cause of action, a party may generally aver knowledge, intent, and state of mind. Majority Opinion at 18. The Majority thus frames the question, not as one of pleading sufficiency, but whether recklessness constitutes a state of mind or a material fact upon which a cause of action is based, *id.*, impliedly signaling

that a general allegation of recklessness alone is sufficient to defeat Camelback's motion. The Majority concludes that the specific allegations of negligence and general allegations of recklessness are sufficient to meet the requirements of Rule 1019(a) and (b), and hence, judgment on the pleadings should not have been granted. *Id.* at 23. While the trial court and the Majority reach differing conclusions on whether judgment on the pleadings should be granted, I believe both failed to recognize how and when "recklessness" should have been pled in this case and hence, how that should have affected the outcome of the Motion.

Rule 1034 governs motions for judgment on the pleadings and provides in relevant part:

> (a) After the relevant pleadings are closed, but within such time as not to unreasonably delayed the trial, any party may move for judgment on the pleadings.

> (b) The court shall enter such judgment or order as shall be proper on the pleadings.

Pa.R.Civ.P. 1034. Pleadings allowed are limited to a complaint and answer, a reply if the answer contains new matter, a counterclaim or cross-claim, a counter-reply if the reply to a counterclaim or cross-claim contains new matter, and a preliminary objection and a response thereto. Pa.R.Civ.P. 1017. In my opinion, the Majority, like the trial court, improperly focused solely upon the allegations of the amended complaint, to decide if judgment on the pleadings should have been granted. Both fail to recognize that the issue of recklessness was introduced into this case by virtue of Camelback pleading

the Activity Release as an affirmative defense in its new matter to the amended complaint. It is in this context that the sufficiency of the pleadings with respect to the issue of "recklessness" had to be considered.

The Majority correctly notes that gross negligence and recklessness have not historically been identified as independent causes of action. Instead, they are aggravated forms of negligence. Majority Opinion at 19, citing PROSSER AND KEATON ON TORTS (5th ed. 1984) at § 34, 208-14. I agree. Plaintiff asserted a single cause of action for negligence. She was not required to separately plead a cause of action for "recklessness". In fact, she did not even have to plead recklessness in her count for negligence for that cause of action to survive. Her amended complaint sufficiently sets forth a cause of action for negligence and could not be dismissed for failure to state a cause of action.

Camelback however, in its answer, by way of asserting new matter, pled the Activity Release executed by Plaintiff as a bar to her claim, as she expressly agreed to release Camelback and not sue for any alleged negligence, including gross negligence, or any other improper conduct. Camelback's Answer, New Matter and Counterclaim at ¶¶ 41, 42. Camelback's pleading of the Activity Release constituted an affirmative defense raised as new matter to Plaintiff's amended complaint. *See* Pa.R.Civ.P. 1030. Camelback was obligated to raise the issue of the release as new matter otherwise that affirmative defense would be considered waived. Pa.R.Civ.P. 1032. With the release pled as an affirmative defense, Plaintiff in turn, at that pleading

juncture, was obligated to meet this affirmative defense with an appropriate response, *i.e.*, that the release does not bar reckless conduct by pleading specifically that conduct by Camelback was reckless conduct. In her reply to this new matter, Plaintiff responded identically to both paragraphs 41and 42 with "Denied. This is a conclusion of law to which no response is required; nonetheless, such averment is denied and strict proof thereof is demanded." Plaintiff did not aver that the Activity Release could not bar reckless conduct, nor did she aver further facts to demonstrate that Camelback's conduct was reckless. It was at this point in the pleadings that the issue of recklessness became relevant and Plaintiff, if not before, needed to plead the manner in which Camelback's conduct was "reckless", since an exculpatory clause in a contract does not release a defendant from liability arising out of recklessness. *See Tayar v. Camelback Ski Corp. Inc.*, 47 A.3d 1190, 1203 (Pa. 2012). Plaintiff was not required to plead reckless conduct to sustain a cause of action for negligence, but was obligated to assert recklessness as a defense to Camelback's affirmative defense that her action was barred by execution of the Activity Release.

This pleading dynamic was explained in *Goldman v. McShain*, 247 A.2d 455 (Pa. 1968) as follows:

> **[T]o say that a possible affirmative defense exists to a complaint is not to say that such a complaint is legally insufficient on its face**. It may still state a claim upon which relief can be granted, even though the relief itself will eventually be denied should defendant prove his affirmative defense. Surely, for example, we would not hold that a complaint in trespass failed to state a claim upon

- 6 -

which relief could be granted simply because the defendant's new matter raised the defense of contributory negligence. To prevail, defendant would still have to prove that defense at trial or somehow succeed in having plaintiff admit it in his own pleadings.

*Id.* at 461 (emphasis added). Instantly, no one challenges that Plaintiff stated a cause of action for negligence. Neither the trial court nor the Majority recognize that it was by virtue of Camelback's new matter and Plaintiff's response thereto that the issue of "recklessness" became material to this action. Both limited their examination to the averments of the amended complaint under which recklessness was not an essential element to Plaintiff's negligence action. Plaintiff in her brief argues that she did not have to plead "recklessness" because it is a conclusion of law. Appellant's Brief at 26. Regardless, once the release became an issue as an affirmative defense, Plaintiff was obligated to respond in a legally sufficient manner in her reply to new matter and no longer could rest in the belief that her cause of action for negligence did not have to plead recklessness to survive a sufficiency challenge. She did not do so.

A defendant is entitled to judgment on the pleadings when a plaintiff's reply to new matter is insufficient as a matter of law. ***Pisiechko v. Diaddorio***, 326 A.2d 608, 611-12 (Pa. Super. 1974). Moreover, a defendant is entitled to judgment on the pleadings when a plaintiff fails to reply sufficiently to new matter raising an affirmative defense. ***Wimbish v. School District of Penn Hills***, 430 A.2d 710, 711-12 (Pa. Cmwlth. 1981). Averments in a pleading to which a responsive pleading is required are

admitted when not denied specifically or by necessary implication. Pa.R.Civ.P. 1029(b). Further, a general denial or a demand for proof shall have the effect of an admission. **Id.** Here, Camelback averred at paragraphs 41 and 42 of its new matter:

> 41. Plaintiff's claims are barred by the terms of the "ACTIVITY RELEASE AND AGREEMENT NOT TO SUE." (<u>See</u> a true and correct copy of the "ACTIVITY RELEASE AND AGREEMENT NOT TO SUE" incorporated herein, attached hereto and marked as Exhibit "A.")
>
> 42. Plaintiff's claims are barred by the "ACTIVITY RELEASE AND AGREEMENT NOT TO SUE" where Plaintiff specifically released defendant Camelback from suit for any alleged negligence, including gross negligence, of defendant Camelback:
>
>> I agree that I will not sue camelback resort, its operating divisions, owners and operators and their officers, directors, agents, servants and employees… and will release camelback from any and all liability if I am or ever was injured… while using any of Camelback's facilities or while present on Camelback's property, even if I contend that such injuries are the result of negligence, including gross negligence, or any other improper conduct… I further agree that I will indemnify and hold harmless Camelback from any loss, liability damages or costs of any kind that may occur as the result of any injury to myself or to any persons for whom I am signing this agreement, even if I contend that such injuries are the result of negligence, including gross negligence, or any improper conduct…

Answer, New Matter and Counterclaim at ¶¶ 41, 42. As stated, Plaintiff responded to both these paragraphs with the identical response - "Denied. This is a conclusion of law to which no response is required; nonetheless, such averment is denied and strict proof thereof is demanded." To the extent

Plaintiff was required to admit or deny each averment of fact under paragraphs 41 and 42, the responses given were insufficient, as the responses simply denied the averments and demanded proof. These responses constituted an admission of facts pled by Camelback in these two paragraphs. Pa.R.Civ.P. 1029(b). Consequently, Camelback was entitled to have the factual averments in these paragraphs admitted. The facts deemed admitted would include the authenticity of the release and that Plaintiff specifically agreed to release Camelback from suit for any alleged negligence, including gross negligence.[1]

More importantly, to avoid the application of the release, Plaintiff was obligated to respond in some manner that the release did not bar her action because of Camelback's reckless conduct. Plaintiff did not do so and consequently, recklessness was not averred as a defense to the release. In essence, Plaintiff failed to respond sufficiently to Camelback's assertion of the Activity Release as a bar to her action.

Plaintiff's amended complaint could not be dismissed for failure to state a cause of action. Judgment on the pleadings could have been granted however, if Plaintiff failed to respond or sufficiently respond to new matter

---

[1] Determining whether averments constitute facts or conclusions of law is not always an easy exercise. *See Gotwalt v. Dellinger*, 577 A.2d 623, 626-27 (Pa. Super. 1990) (in evaluating whether an averment contained in a new matter requires a response, courts must consider whether the averments are fact-based or are merely conclusions of law. As a component of this analysis, courts consider complex and abstract legal principles and utilize a large degree of discretion).

allegations that would defeat her action. Neither the trial court nor the Majority examined the issue of recklessness in the proper pleading context it had to be considered, focusing instead only upon the amended complaint and ignoring that the issue of recklessness was a product of new matter and that it only became relevant in that context.

Nonetheless, Rule 1034 requires that a court review all the relevant pleadings in a case when deciding whether to grant a motion for judgment on the pleadings. Despite Plaintiff's failure to adequately plead recklessness in response to the Activity Release raised as new matter, Rule 1034 still requires a comprehensive review of all the pleadings to determine whether Plaintiff pled recklessness elsewhere even though pleading recklessness was not required to assert a negligence cause of action. This returns us to paragraph 21 of Plaintiff's amended complaint, the only paragraph where "recklessness" was averred. While I end by examining the amended complaint, the point where the Majority begins its analysis, this is not merely form over substance. The question is not whether recklessness is a state of mind that may be generally pled in a complaint as framed by the Majority. Rather, the question is whether the pleadings sufficiently allege reckless conduct as a response to Camelback's affirmative defense that Plaintiff's action is barred by the Activity Release. I conclude the pleadings are not sufficient to overcome the affirmative defense of the Activity Release.

In **Tayar**, our Supreme Court discussed at length the difference between negligent and reckless conduct that I find to be more on point than

the Majority's resort to treatise that attempts to explain recklessness in the context of comparing "willful, wanton, and reckless" conduct. ***See*** Majority Opinion at 18-20.

> **Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence.** In ***Fitsko v. Gaughenbaugh***, [] 69 A.2d 76 ([Pa.] 1949) we cited with approval the Restatement (Second) of Torts definition of "reckless disregard" and its explanation of the distinction between ordinary negligence and recklessness. Specifically, the Restatement (Second) of Torts defines "reckless disregard" as follows:
>
>> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
>
> Restatement (Second) of Torts § 500 (1965). The Commentary to this Section emphasizes that "**[recklessness] must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent.**" ***Id.,*** *cmt*. a. Further, as relied on in ***Fitsko***, the Commentary contrasts negligence and recklessness:
>
>> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that **reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose**

- 11 -

> **this danger to any reasonable man**....  The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

> ***Id.***, *cmt.* g; ***see also*** AMJUR Negligence § 274 ("Recklessness is more than ordinary negligence and more than want of ordinary care; it is an extreme departure from ordinary care, a wanton or heedless indifference to consequences, an indifference whether or not wrong is done, and an indifference to the rights of others"). Our criminal laws similarly distinguish recklessness and negligence on the basis of the consciousness of the action or inaction.  ***See*** 18 Pa.C.S.A. § 302(b)(3), (4) (providing that a person acts recklessly when he "consciously disregards a substantial and unjustifiable risk," while a person acts negligently when he "should be aware of a substantial and unjustifiable risk").

> **This conceptualization of recklessness as requiring *conscious* action or inaction not only distinguishes recklessness from ordinary negligence, but aligns it more closely with intentional conduct**.

***Tayar***, 47 A.3d at 1200-1203 (emphasis added).  Distilled to a few simple concepts, reckless conduct may be characterized as conduct falling just short of intentional conduct where there is *conscious action* by an actor with *knowledge* that their conduct may pose an *unreasonable risk of harm or a serious danger* to others.  In other words, an actor must know that their conduct presents an unreasonable risk or serious harm to another, but the actor decides nonetheless, to continue in their conduct despite knowing of the risk and potential serious injury to another.  To fully appreciate the level of culpability that must be pled to demonstrate reckless conduct, one need only consider that recklessness is conduct that demonstrates such an indifference

to the rights of others that, in an appropriate case, punitive damages may be awarded. **See Feld v. Merriam**, 485 A.2d 742 (Pa. 1984) (punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive). Paragraph 21 of Plaintiff's amended complaint falls far short of averring egregious conduct that may be considered as reckless.

Plaintiff averred Camelback was reckless, careless, and negligent for failing to monitor the speed of the zip line, it left Plaintiff to land without help, did not respond to Plaintiff's request to slow down the zip lining machine, and failed to monitor the zip lining machine engine. Absent from all these averments, individually or collectively, is any suggestion that Camelback was consciously aware that its conduct would pose a serious risk of injury to Plaintiff and that it decided nonetheless to proceed in its conduct. Despite attaching the label of "recklessness" to her averments, Plaintiff only has averred facts, if proven, that may establish inadvertence or negligence. In my opinion, judgment on the pleadings was properly entered by the trial court in Camelback's favor.

I believe it also is important to recognize that, when considering whether reckless conduct is present, the nature of the venture must be placed in context. Some sports are inherently dangerous, *i.e.*, sky diving, car racing, downhill skiing, scuba diving, etc. Zip lining also is a sport sought after by

thrill seekers that presents inherent dangers.[2]  A person, properly equipped with protective equipment, voluntarily agrees to launch themselves from the top of a platform falling at whatever speed gravity dictates over some distance on a length of line to arrive at a distant point where a landing is required. These environs present inherent risks.  While precautions must be taken, a charge of reckless conduct cannot be made out in a vacuum ignoring the risk of injury inherent in the sport.  Falling at whatever speed gravity dictates and perfecting a safe landing present risks voluntarily assumed by a participant. Even the exercise of all reasonable care by an operator cannot rule out the possibility of sustaining some injury when performing those tasks.

Given its interpretation of Rule 1019, the Majority emphatically states that its ruling removes any doubt that, so long as a plaintiff's complaint (1) specifically alleges facts to state a *prima facie* claim for the tort of negligence, and (2) also alleges that the defendant acted recklessly, the latter state-of-mind issue may only be resolved as a matter of law after discovery has closed.

---

[2]  ***See*** *https://www.robsonforensic.com/articles/zip-line-safety-expert*. "According to a 2015 study by the American Journal of Emergency Medicine, the number of zip line injuries in the United States reached 3,600 in 2012, 11.64 per 1 million population.  This compares with 0.0127/1 million population for amusement park rides (2015).  Reported injuries included broken bones (46%), bruises (15.2%), strains/sprains (15.1%), and concussions/closed head injuries (7%).  Ohio State University researchers found that approximately 12% of zip line injuries resulted in hospitalization. Between 2006 and 2016 there were 16 zip line fatalities reported in the United States, predominantly from falls (77%), material failures, collisions, and entanglements."

Majority Opinion at n. 6. Respectfully, I strongly disagree and find this statement of principles not to be supported by our case law.

When relevant, Rule 1019(b) allows a condition of mind to be averred generally, *but this does not eliminate the requirement of pleading factual circumstances giving rise to an inference as to the state of an actor's mind.* **See** Goodrich Amram 2d § 1019(b)(11). To this end, I am in full agreement with the dissent of my colleague Judge Bender wherein he documents cases extending back almost 50 years through the near present establishing the requirement that while recklessness may be averred generally, the material facts constituting the conduct that demonstrate recklessness also must be pleaded. **See** Dissent, Judge Bender at 3-10, citing **Ammlung v. City of Chester**, 302 A.2d 491 (Pa. Super. 1973) and related cases. The Majority's logic divorces the conduct that must be alleged to support a claim of recklessness from the conclusion of recklessness that it suggests can be asserted by label alone to survive a sufficiency challenge. While some liberality may be tolerated in our rules, *see* Pa.R.Civ.P. 126, the Majority's proposed interpretation of pleading states of mind generally under Rule 1019 would make pleading states of mind farcical. Under the Majority's logic, any complaint that alleges mere negligence can be converted into a claim alleging recklessness by merely averring that state of mind, even in the most obvious of cases where only mere inadvertence is alleged or can be inferred.

The Majority also, without citation to authority, would permit a party to remedy defective pleadings by engaging in discovery as a fishing expedition

to see if any facts could be discovered to support the claim, even when a pleading is insufficient to permit such inquiry. *See* Majority Opinion at 22-23. Our case law does not permit this practice. *See Berkeyheiser v. A-Plus Investigations*, 936 A. 2d 1117, 1127 (Pa. Super. 2007) (the court must ensure appellee's discovery requests are tailored to her specific negligence cause of action and not permit a mere "fishing expedition); *McNeil v. Jordan*, 894 A.2d 1260 (Pa. 2006) (under no circumstance should a plaintiff be allowed to embark upon a "fishing expedition," or otherwise rely on an amorphous discovery process to detect a cause of action he lacks probable cause to anticipate prior to pre-complaint discovery); *Cooper v. Frankford Health Care System*, 960 A.2d 134 (Pa. Super. 2008) (citing *McNeil*); *Land v. State Farm Mut. Ins. Co.*, 600 A.2d 605 (Pa. Super. 1991) ( while discovery should be liberally allowed, "fishing expeditions" are not to be countenanced under the guise of discovery). While Rule 1019(b) permits averring states of mind generally, Rule 1019(a) also requires that the material facts supporting an action or defense be pled as well. Averring states of mind generally is by necessity, *see Ammlung*, *supra*, but facts also must be alleged from which a state of mind may be inferred. Only in this manner can subdivisions (a) and (b) of Rule 1019 be given effect and reconciled together.

Our analysis on the issue of granting judgment on the pleadings however, does not end here. At the time Camelback filed its Motion, all discovery was completed and the matter was set for trial. If a defect appeared in Plaintiff's amended complaint that could be cured by amendment, the court

should not have granted the Motion without granting Plaintiff an opportunity to amend her pleadings. **Williams By and Through Williams v. Lewis**, 466 A.2d 682 (Pa. Super. 1983). However, where there is no apparent possibility that a plaintiff will be able to set forth a better case by amendment, there is no abuse of a court's discretion in refusing an opportunity to amend. **Id.**; **Wimbish**, **supra**. With the record fully developed in this case and aided by the parties' summary judgment submissions, the court was well informed to determine whether Plaintiff would be able to amend her pleadings to sufficiently plead recklessness. The trial court's review of the record demonstrates she could not. Leave to amend need not have been considered, and but for the trial court exercising caution respecting the appropriateness of the timing of the motion for judgment on the pleadings, it would not have been necessary to decide summary judgment.

## B.    The Motion for Summary Judgment

On April 16, 2019, Camelback filed its Motion. By its order of March 20, 2019, the court expressly granted permission for Camelback to file a motion for summary judgment.[3] In its Motion, Camelback went beyond that expressly

---

[3] Citing the procedural history of this case, the Majority is highly critical of Camelback filing a motion for judgment on the pleadings which it deemed to be unnecessary and without justification at a time to unnecessarily delay trial. Majority opinion at n.7. Respectfully, I do not believe this criticism to be warranted, because the trial court expressly exercised its discretion to allow the filing of a summary judgment motion. The landscape of this case changed significantly when, on March 20, 2019, the court granted Camelback's *unopposed* motion to preclude evidence of negligence in light of the fact that
*(Footnote Continued Next Page)*

permitted by the court by also requesting judgment on the pleadings. It was in the alternative that it sought summary judgment if the court determined Plaintiff sufficiently pled recklessness in her amended complaint. The court granted Camelback's motion for judgment on the pleadings, but out of caution, considering that judgment on the pleadings may be considered untimely, decided the summary judgment motion as well. With both a motion for judgment on the pleadings and a motion for summary judgment before the court, presented after all discovery was complete and the case ready for trial, the court would have been within its rights to simply consider the matter as one for summary judgment. ***See Demmler v. Smithkline***, 671 A.2d 1151 (Pa. Super. 1996) (a trial court's order dismissing a case prior to trial is properly characterized as either a summary judgment or a judgment on the pleadings. Since discovery was fully conducted the order entered was treated as one for summary judgment.). Regardless, the court agreed Plaintiff failed to establish evidence on the record sufficient to support a claim for reckless conduct. The Statement at 14. In granting summary judgment, the court held:

> According to ***Tayar*** . . . "recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to

_____

Plaintiff could succeed only if she could prove recklessness. With the triable issues substantially narrowed, it was within the court's discretion to decide whether considering a motion for summary judgment would further facilitate disposition of this case. Although the trial court did not grant permission to file a motion for judgment on the pleadings, I can discern no prejudice in doing so, since it also found merit to Camelback's motion for summary judgment.

others whereas negligence suggests unconscious inadvertence." . . . Zip-lining is highly regulated and the operation and maintenance of a zip-line requires regular inspections and corresponding permits. There is nothing in the record to support or suggest Camelback failed to exercise reasonable care in the maintenance and operation of the zip-line on the day of Plaintiff's accident. There is nothing of record to establish that any manufacturing or industry specification, standard or regulation was violated or breached by Camelback. Moreover, Plaintiff has not established any evidence to show Camelback (1) engaged in conduct that involved a risk of harm to Plaintiff substantially in excess of that necessary to make it negligent, (2) intentionally did an act or intentionally failed to do an act in reckless disregard for Plaintiff's safety, or (3) engaged in conduct that constituted an extreme departure from ordinary care.

*Id.* (citations omitted). As Judge Bender in his dissent sadly recognizes, Appellant's brief does not advance its case well, as it lacks any cogent discussion of the record under the standard governing summary judgment. The Majority was at the same disadvantage. Without development by Appellant in her brief, the Majority takes on the task of providing its own detailed review of the record, focusing principally upon Plaintiff's expert report, submitted for the first time in response to Camelback's Motion, to analyze whether Plaintiff set forth sufficient proof of recklessness to survive dismissal of her action.

I believe Judge Bender has analyzed and corrected the record misrepresentations in this case well to demonstrate that recklessness has not been sufficiently established to allow this case to survive summary judgment. I join completely in his analysis. However, I too wish to add several

observations in support of my opinion that the trial court did not err in granting summary judgment in favor of Camelback.

Plaintiff's shifting theories of harm have complicated review of the record and the determination as to what precisely is Plaintiff's theory of reckless harm. As we already recognized, paragraph 21 of the amended complaint constitutes the only reference to reckless conduct in all of the Plaintiff's pleadings. Under that paragraph, Plaintiff claimed harm as a result of Camelback not monitoring the speed of the zip line, leaving her to land with no help, failing to slow down the zip lining machine, and failing to inspect the zip lining machine engine. In her March 14, 2019 pretrial statement, Plaintiff presented a different picture. She stated that due to her weight, a ripple effect was created in the zip line which then slammed her into the ground resulting in significant physical harm. She claimed Camelback's former employees testified they were aware of the ripple effect when heavy individuals ride the line. She further claimed they were aware of this so that when Plaintiff approached the end of the line she was not able to lift her feet high enough to avoid injury. Plaintiff concluded Camelback recklessly allowed a greater weight limit than appropriate. *See* Plaintiff's Pre-Trial Statement, 3/14/19 at 1-2 (unpaginated). A completely different picture then surfaced in Plaintiff's response to Camelback's Motion where Plaintiff for the first time, some 16 months beyond the court's case management deadline of January 8, 2018, and as a last resort, produced the May 13, 2019 expert report of Stephen Wolf that set forth different theories to demonstrate reckless harm.

Plaintiff's Memorandum of Law in Opposition to Camelback's Motion for Judgment on then Pleadings/Supplemental Motion for Summary Judgment, 5/16/19.

The Wolf report represented that Plaintiff was unable to sufficiently pick up her feet due to her weight and that her body impacted the landing deck twice. First, when her feet impacted the mats/carpets that were in front of the landing deck that concealed the front face of the deck, and then after her body swung and spun due to the first impact after which she then impacted the deck a second time. Wolf claims Camelback was aware of potential harm due to impacting the front of the landing deck by virtue of placing a sign stating "Lift your feet" at the bottom of the zip line. Camelback further instructed its employees to yell "pick up your feet" as the customer was speeding down the zip line. The Wolf report states that Camelback thus was aware a customer could impact the face of the landing deck that protrudes significantly above ground level as it was aware customers may not be able to lift their feet. The report then describes the landing platform as having a face that protrudes sharply and vertically from the ground making the deck perfectly positioned to cause an injury. Wolf concludes that Camelback recklessly ignored the gross risks of the face of the landing deck protruding above ground level and actually attempted to conceal the risk by placing soft mats/carpeting over the face of the landing. *Id.* at 1-4 (unpaginated).

Fortunately, when deciding a motion for summary judgment, a court is bound to examine what is actually reflected in the record. Here, the record

dispels much of counsel's evolving theories as to how the harm occurred in this case and many of the factual assumptions underlying the Wolf report. Unfortunately, the Majority seems to accept at face value the Wolf report without examining whether the facts assumed in that report have support in the record for purposes of deciding summary judgment. It would have been of great assistance to this Court had Plaintiff taken the laboring oar to accurately set forth the material record facts for us to consider under this appeal.

To begin, there is no zip lining "machine" or "engine" that controls the speed a person runs the zip line as admitted by Plaintiff in her deposition and contrary to what was stated in her amended complaint. N.T., Plaintiff's Deposition, 10/12/17, at 79. Instead, as described by Camelback employee Brett Dunphy, a zip line attendant, the ride begins when a person is clipped to a trolley that attaches to the zip line. N.T., Dunphy Deposition, 12/20/17, at 7-8. From that point forward, the ride down the line is governed only by gravity. *Id.* Near the end of the ride there is a braking system that slows the rider down until they come to a stop. *Id.* This was confirmed by Camelback employee, Clinton Frantz, a supervisor of all adventure park rides that includes the zip lines. N.T., Clinton Frantz Deposition, 10/9/17, at 12. The zip line is a gravity zip line that uses a braking system at the end of the ride to slow the rider down near the end of the ride. *Id.* at 971-72. The braking mechanism, known as a zipSTOP braking system, is made by Head Rush Technologies. *Id.* It slows the rider down progressively near the end of the ride when a bumper

on the line is contacted. *Id.* The system then brings the rider to a complete stop once the rider is upon the landing deck. *Id.* The zipSTOP system is not a powered system, *i.e.*, run by gas or electricity. *Id.* at 993. Nothing in the record contradicts the description of the zip line or its braking system as testified to by Camelback employees Dunphy and Frantz. Nor is there any testimony, lay, expert or otherwise, to support a claim that the speed of the zip line was governed by anything other than gravity or that there was any malfunction in the braking system. These factual realities effectively negate three of the four bases pled in Plaintiff's amended complaint:[4] that Camelback failed to monitor the speed of the zip line, it failed to slow down the "zip lining machine," and failed to properly monitor the zip lining "machine engine." *See* Plaintiff's Amended Complaint, 1/25/17, at ¶ 21(a), (d), and (e). This leaves only one basis in the amended complaint upon which liability is asserted. Subparagraph (b) asserts Camelback failed to use reasonable care by leaving Plaintiff to land with no help. This last claim requires that we examine the record to see how this accident occurred.

Plaintiff testified that, while coming down the line and while she already was over the top of the landing deck, she asked the attendant if he could slow it down. N.T., Plaintiff's Deposition 10/12/17, at 50-51. His only response was that it was almost done. *Id.* She then very clearly testified that she was

_____

[4] Plaintiff's amended complaint at paragraph 21 contains 5 subparts (a) through (e), but subpart (c) is blank leaving only 4 subparts with averments respecting liability.

over the top of the landing deck at the bottom when she was pushed back a little, came backwards a little, her body pivoted, spun around, and then her leg dropped onto the landing deck whereupon she felt a crunch. *Id.* at 51-53. Up until that point, her foot had not struck anything and she had not done anything with her foot. *Id.* at 52. She specifically testified that it was when her leg landed on top of the landing deck that she heard the crunch. *Id.* at 53. Plaintiff testified that she kept her legs up at the beginning of the ride as she was told, and that at no time were her feet dragging on the ground prior to landing on top of the deck and that she made sure to have her legs up. *Id.* at 52, 54.

Plaintiff's recollection of her accident, with minor exception, was corroborated by Dunphy, the zip line attendant. He observed how Plaintiff hit her leg when she landed. He testified that her feet first kind of dragged along the anti-fatigue mats and then the impact came when she stopped, swung up, and hit the deck to land. N.T., Dunphy Deposition 12/20/17, at 886. Her leg broke when it hit the landing deck. *Id.* He recalls telling Plaintiff to lift up her feet, that she attempted to do so, but due to her weight her feet dragged along the mats. *Id.* at 15-16. She, however, was within the weight limits of the zip line. *Id.* Each rider is weighed at the top of the ride before sending them down the line. *Id.* at 16. At counsel's suggestion, Plaintiff's feet dragging was referred to as the "first" impact and the landing on top of the deck as the "second". *Id.* at 11. It was the second that caused Plaintiff's injury. *Id.*

The combination of Plaintiff's, Dunphy's, and Frantz's testimony do not lend support to Plaintiff's remaining averment in her amended complaint that Camelback failed to use reasonable care by leaving Plaintiff to land with no help. To the contrary, the ride was monitored from beginning to end, with the zip line attendant reminding Plaintiff to lift her feet and monitoring her until the ride came to a complete stop. In her pretrial statement, Plaintiff's counsel introduced the theory that heavy people cause the zip line to ripple up and down so that at the end of the ride people are not able to lift their feet high enough to avoid injury and that Camelback allowed a greater weight limit than appropriate. Certainly, Plaintiff's testimony lends no factual credence to this theory, as it was her testimony she held her feet up and that her injury did not occur until she was over the landing deck. Nor does the record support any claim that Plaintiff was over the weight limit for her line. Not surprisingly, Plaintiff finally resorts to her late-filed Wolf report to construct another theory of liability to argue that Camelback acted recklessly.

Expert testimony is proper only if the facts upon which the testimony is based are of record. *Commonwealth v. Rounds*, 542 A.2d 997 (Pa. 1988).

> **It is clear . . . that expert opinion testimony is proper if the facts upon which it is based are of record. This requirement for admissibility of opinion testimony is crucial.** The purpose of expert testimony is to assist the factfinder in understanding issues which are complex or go beyond common knowledge. An expert's function is to assist the jury in understanding the problem so that the jury can make the ultimate determination. If a jury disbelieves the facts upon which the opinion is based, the jury undoubtedly will disregard the expert's opinion. Likewise, if a jury accepts the veracity of the

facts which the expert relies upon, it is more likely that the jury will accept the expert's opinion.  At the heart of any analysis is the veracity of the facts upon which the conclusion is based.  Without the facts, a jury cannot make any determination as to validity of the expert's opinion.  To hold otherwise would result in a total and complete usurpation of the jury's function in our system of justice.

*Id.* at 999 (emphasis added; case references omitted).  The Majority errs by accepting the Wolf report without questioning whether the facts underlying his report respecting Plaintiff's injury have any support in the record.

The Wolf report posited that Camelback's zip line was low enough that a rider's legs might have contacted the ground before the pulley carriage contacted the braking device.  Wolf Report, 5/13/19, at 2.  If the ground was free of imperfections, a rider's feet would drag smoothly up a wooden platform causing a reduction in speed with the rider's forward movement arrested by a combination of manual braking by physical engagement of an employee and a mechanical impact attenuation device at the end of the line.  *Id.* at 2-3.  Wolf contended that, because of the risk of injury, all employees instructed participants to raise their legs so their legs did not touch the ground until they had been brought to a stop.  *Id.* at 3.  Wolf concluded it was not reasonable for a participant's safety to be contingent on being able to perform a physical feat, such as raising legs or being able to listen and follow directions, when experiencing an adrenaline inducing thrill ride.  *Id.*  The fact Camelback required its staff to yell at participants to raise their legs reveals they were aware that contacting the ground was a potential cause of injury.  *Id.* at 4.  Wolf stated that what was more dangerous than sliding one's feet along the

ground was having them hit something hard. *Id.* He then criticized the leading edge of the wooden deck that he claimed protruded sharply and vertically at a 90° angle to the ground, as being perfectly positioned to cause an injury. *Id.* He surmised that Camelback must have known of this condition, because it covered the protruding edge with a piece of carpet that concealed rather than removed this risk. *Id.* He also opined that there was risk in the design by requiring a rider to comply with a strenuous physical task and willingly allowing participants to be subject to an unnecessary and preventable danger. *Id.* at 5. He stated that gross risks were intentionally hidden under a carpet. *Id.* He thus opined, within a reasonable degree of certainty, that the injury sustained by Plaintiff was directly attributable to the failure of Camelback to prevent injury by its intentional disregard for safety by concealing rather than removing an obvious threat to the safety of their clients. *Id.*

Wolf's conclusion is without any factual basis in the record. Wolf leveled criticism at the design of the landing platform that may permit a rider to collide with the face of the landing platform. Regardless of whether this may constitute a design defect, there is absolutely no evidence of record that Plaintiff collided with the 90° angle of the face of the platform. To the contrary, the record only supports facts that either Plaintiff held her legs up until she reached a stop, or once upon the landing platform, dragged her foot or feet before coming to a stop and traveling backwards. In this latter scenario, Wolf contradicted himself as he found no fault with foot dragging, as

he indicated in his report that foot dragging was part of the way in which a rider could cause a reduction in speed before stopping. *Id.* at 2.

Furthermore, there is no support in the record that covering the face of the platform with carpeting concealed the vertical face of the platform. I find this particularly curious because there is no indication in the record that Plaintiff, or anyone else, was unaware of the platform's location. Even if concealed, the observation is completely irrelevant because there is no testimony Plaintiff collided with the face of the platform. Likewise, I fail to see how requiring participants to lift their feet when engaging on this thrill ride to land constitutes reckless conduct. This especially is so where Plaintiff indicated she did so at all times and was instructed to do so by Camelback numerous times before landing, measures obviously designed to assure a safe ride. It is unclear to me how requiring someone to lift their legs when approaching a landing is an unreasonably strenuous task presenting a threat of serious harm considering the sport being engaged in as suggested by Wolf in his report. Regardless, even if Plaintiff dragged her feet (something she disputes) before coming to a stop and then traveling backwards, there is no indication in the record that this had any effect on her leg hitting the platform with such force to cause her injury so that requiring a rider to raise their legs demonstrates reckless conduct by Camelback. Even if Wolf's report could support triable negligence issues, it is completely lacking in record support to demonstrate that Camelback engaged in conscious *action* knowing that its

conduct would or may pose an unreasonable risk of harm or a serious danger to Plaintiff.

The material facts as to how Plaintiff sustained her injury are largely uncontradicted. Upon arriving on the landing deck during the braking process, she rose up to a stop, spun around, traveled backwards, and then her leg forcefully contacted the landing deck causing her injury. The record is completely devoid of any evidence that a condition of the zip line was known to Camelback that would cause serious injury to a rider, notwithstanding any inherent risks in the sport, but that it allowed its customers to ride the zip line knowing that to do so would expose them to an unreasonable or serious risk of injury. Wolf's report that opined Camelback acted intentionally to conceal a condition that caused Plaintiff's injury is without any factual foundation in the record. In summary, I agree with the trial court when it stated: "Plaintiff has not established any evidence to show Camelback (1) engaged in conduct that involved a risk of harm to Plaintiff substantially in excess of that necessary to make it negligent, (2) intentionally did an act or intentionally failed to do an act in reckless disregard for Plaintiff's safety, or (3) engaged in conduct that constituted an extreme departure from ordinary care." The Statement at 14. The record quite simply is bare of any evidence that Camelback acted recklessly. In my opinion, the trial court did not err in granting summary judgment in Camelback's favor.

For the foregoing reasons, I respectfully dissent from the Majority's Opinion, and would affirm judgment in favor of Camelback.

President Judge Emeritus Bender and Judge Olson concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2022